UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| NINOSHKA MATIAS,<br>　　Plaintiff, | : : : : | |
| v. | : : | No. 5:21-cv-02288 |
| TERRAPIN HOUSE, INC.,<br>　　Defendant. | : : : : | |

**O P I N I O N**

**Motion to Dismiss for Failure to State a Claim, ECF No. 12 – Denied**

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　**September 16, 2021**
**United States District Judge**

I.　　**INTRODUCTION**

　　This matter involves claims by Plaintiff Ninoshka Matias against her former employer, Defendant Terrapin House. Matias was terminated from her employment with Terrapin after she tested positive for COVID-19. Matias alleges that Terrapin terminated her in violation of the Families First Coronavirus Response Act (FFCRA), the Americans with Disabilities Act Amendments Act (ADAAA), and the Pennsylvania Human Relations Act (PHRA). Terrapin moves to dismiss Matias' claims under the ADAAA and PHRA.

　　Following a review of the Amended Complaint, this Court concludes that Matias has sufficiently pleaded claims under both the ADAAA and PHRA. Accordingly, Terrapin's motion to dismiss is denied.

## II.     BACKGROUND[1]

Matias was employed with Terrapin from approximately August 28, 2020 until November 22, 2020 as a Direct Support Professional.[2]  *See* Am. Compl. ¶¶ 16, 29.  Matias alleges that she received no discipline during the course of her employment until her termination on November 22, 2020.  *See id.* ¶ 30.  On that date, Matias informed Terrapin of her need for leave under the FFCRA, disclosing to Terrapin that she had received a positive COVID-19 test result.  *See id.* ¶ 31.  Rather than provide FFCRA leave, Terrapin terminated Matias on the same date that she informed Terrapin of her positive COVID-19 test.  *See id.* ¶ 35.  Terrapin indicated in the termination letter that it terminated Matias because she was "not a good fit."  *See id.* ¶ 36.

Matias alleges that Terrapin's decision to terminate her was motivated by her request for COVID-19 leave.  *See id.* ¶¶ 39-41.  Accordingly, Matias brings claims under the FFCRA for Terrapin's failure to provide her with leave.  *See id.* ¶ 54.  Additionally, Matias brings claims under the ADAAA and PHRA for discrimination on the basis of a perceived disability.  *See id.* ¶¶ 65, 74.

Matias initiated this action with the filing of a Complaint on May 19, 2021, which asserted only a single claim under the FFCRA.  *See* Compl., ECF No. 1.  On July 13, 2021, Terrapin filed an Answer to the Complaint.  *See* Answer, ECF No. 8.  On August 3, 2021, Matias filed an Amended Complaint that added claims under the ADAAA and PHRA, Counts II and III in the Amended Complaint respectively.  *See* Am. Compl.  Terrapin now moves to dismiss the

---

[1]     The background is taken from the allegations in the Amended Complaint.  *See* Am. Compl., ECF No. 11.

[2]     Matias' Amended Complaint does not indicate what type of business Terrapin engages in.  However, Terrapin's motion explains that it is a residential facility that provides twenty-four-hour care for two residents with significant medical complications.  *See* Mot. 5, ECF No. 12 (ECF Pagination).

ADAAA and PHRA claims in the Amended Complaint. *See* Mot., ECF No. 12. Matias responded in opposition to the motion on September 1, 2021. *See* Resp., ECF No. 16. Terrapin did not file a reply.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss– Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United*

*States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      **B.**      **ADAAA Discrimination – Review of Applicable Law**

"No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A). To state a prima facie case of discrimination under the ADA, a plaintiff must also show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).

The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The determination of whether an individual is substantially limited in a major

life activity must be made 'on a case-by-case basis.'" *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)).

An "individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). To prevail, the "plaintiff would have to show that his employer misinterpreted information about his limitations to conclude that he was unable to perform a 'wide range or class of jobs.'" *Keyes v. Catholic Charities of the Archdiocese of Phila.*, 415 F. App'x 405, 410 (3d Cir. 2011); *Amoroso v. Bucks County Court of Common Pleas*, No. 13-0689, 2014 U.S. Dist. LEXIS 41469, at *24-25 (E.D. Pa. Mar. 28, 2014) ("Simply alleging that an employer knew about a disability is not sufficient to demonstrate that the employer regarded the employee as disabled."). A "plaintiff must show that the employer believed that a major life activity was substantially limited by the plaintiff's impairment." *Popko v. Penn State Milton S. Hershey Med. Ctr.*, No. 1:13-cv-01845, 2014 U.S. Dist. LEXIS 95486, at *16 (M.D. Pa. July 14, 2014). "A close temporal proximity between the dates an employer learns of an employee's physical or mental impairment and the employee's termination is sufficient to raise an inference of 'regarded as' disability discrimination." *See McFadden v. BioMedical Sys. Corp.*, Civ. A. No. 13-4487, 2014 WL 80717, at *4 (E.D. Pa. Jan. 9, 2014) (citing *Warshaw v. Concerta Health Servs.*, 719 F. Supp. 2d 484, 496 (E.D. Pa. 2010)).

However, the ADAAA "limits 'regarded as' claims by excluding 'impairments that are transitory and minor.'" *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 246 (3d Cir. 2020)

(quoting 42 U.S.C. § 12102(3)(B)).  The ADAAA "defines 'transitory' as 'an impairment with an actual or expected duration of 6 months or less,' but does not define 'minor.'" *See id.* (quoting 42 U.S.C. § 12102(3)(B)).  "To establish this defense, a covered entity must demonstrate that the impairment is *both* transitory and minor.  Whether the impairment at issue is or would be transitory and minor is to be determined objectively." *See id.* (quoting 29 C.F.R. § 1630.15(f)); *see also id.* at 248 ("[A]n impairment that is transitory because it lasts less than six months but is objectively non-minor must also fall outside the 'transitory and minor' exception.").

        C.        **PHRA Disability Discrimination – Review of Applicable Law**

"Prior to the ADAAA, the PHRA and ADA were interpreted to have the same standard for determination of liability."  *See Rocco v. Gordon Food Serv.*, 998 F. Supp. 2d 422, 428 (W.D. Pa. 2014) (citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012)). However, "Pennsylvania has not amended the PHRA to remain coextensive with the ADAAA." *See id.* (citing *Canfield v. Movie Tavern, Inc.*, Civ. No. 13-3484, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013)).[3]

> Under the PHRA "regarded as" standard,
>
> the relevant inquiry is whether the [employer] perceived [the plaintiff] as disabled within the meaning of the PHRA and, thus, is a question of intent, and not whether [plaintiff] was actually disabled at the time of the adverse employment actions....[The plaintiff] must also show that [her] employer believed that [her] perceived disability substantially limits a major life activity.

---

[3]     There is an active split between district courts within the Third Circuit as to whether the PHRA and ADAAA should be treated as coextensive.  *See Rocco*, 998 F. Supp. 2d at 428 (indicating PHRA and ADAAA are distinct).  *But see McFadden*, 2014 WL 80717, at *2 n.2 (indicating PHRA and ADAAA are to be treated as coextensive).  Neither party raises this distinction in the briefing supplied to this Court.  However, as this Court discusses below, even assuming that the standards are distinct, Matias' allegations suffice to set forth a claim under both the ADAAA and PHRA standards.

*Koci v. Central City Optical Co.*, 69 F. Supp. 3d 483, 489 (E.D. Pa. 2014) (quoting *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 694 (W.D. Pa. 2014)).

As with the ADAAA, "[e]vidence of close proximity between an employer learning of facts giving rise to the perception of a disability and adverse employment action also is a basis for a claim under the PHRA." *See Hudson v. Catch, Inc.*, Civ. A. No. 16-2032, 2016 WL 8716462, at *6 n.6 (E.D. Pa. Oct. 7, 2016) (citing *Decker v. Alliant Techs., LLC*, 871 F. Supp. 2d 413, 423, 427-28 (E.D. Pa. 2012)).

The Third Circuit has applied the "transitory and minor" exception to "regarded as" claims under the PHRA. *Macfarlan*, 675 F.3d at 274 (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002)); *see also Michalesko v. Borough*, 658 F. App'x 105, 107 (3d Cir. 2016) (applying transitory and minor exception to ADA and PHRA claims alike).

## IV.  DISCUSSION

In her Amended Complaint, Matias alleges claims of disability discrimination under both the ADAAA and PHRA.  Primarily, Matias alleges that Terrapin regarded her as having a disability, COVID-19, and Terrapin believed that disability to substantially impair a major life activity, which led to Terrapin's decision to terminate her.  Terrapin contests that it did not regard Matias as having a disability, and to the extent that Matias can be regarded as having a disability, the disability is transitory and minor.

Following a review of the Amended Complaint, this Court concludes that Matias has sufficiently alleged a claim for "regarded as" disability discrimination under both the ADAAA and PHRA.  Moreover, Terrapin has failed to show that COVID-19 is transitory *and* minor.  Accordingly, Terrapin's motion to dismiss is denied.

**A.     Matias sufficiently alleges a claim for 'regarded as' disability discrimination.**

In order to make out a "regarded as" claim, Matias must allege that Terrapin perceived her to have a disability and that Terrapin perceived that disability to substantially impair a major life activity.  *See* 42 U.S.C. § 12102(3)(A); *Koci*, 69 F. Supp. 3d at 489.  Based on the allegations in the Amended Complain, Matias first informed Terrapin about her potential illness on November 19, 2020.  *See* Am. Compl. Ex. A at 2, ECF No. 11-1.  On that date, Matias texted a representative of Terrapin to inform them that she felt ill.  *See id.*  When the representative inquired into whether Matias was experiencing symptoms, Matias said she was losing her sense of taste and smell.  *See id.*

Matias underwent COVID-19 testing that same week.  *See id.* at 3.  Matias informed Terrapin of her positive COVID-19 test on November 22, 2020.  *See id.* at 4.  That very same day, she was terminated by Terrapin, purportedly because she was "not a good fit."  *See* Am. Compl. Ex. B, ECF No. 11-2.  Moreover, Matias alleges that she received no discipline at Terrapin prior to that date.  *See* Am. Compl. ¶ 30.

Recent guidance jointly developed by the Department of Health and Human Services and Department of Justice indicates that certain forms of COVID-19 may be considered a disability under the ADA.  *See Guidance on "Long COVID" as a Disability under the ADA, Section 504, and Section 1557*, DEP'T OF HEALTH & HUM. SERVS. & DEP'T OF JUSTICE (July 26, 2021), https://www.ada.gov/long_covid_joint_guidance.pdf.  As this guidance details, COVID-19 "is a physiological condition affecting one or more body systems."  *See id.* at 3.  Accordingly, COVID-19 may be a "physical or mental impairment under the ADA."  *See id.*  Additionally, the guidance states that certain forms of COVID-19 can "substantially limit major life activity," *inter*

*alia*, one's respiratory function, gastrointestinal function, and brain function, for periods lasting months after first being infected. *See id.* at 4.

The "common symptoms" of these longer forms of COVID-19 include "loss of taste or smell." *See id.* at 2. On November 19, 2020, days prior to termination, Matias informed Terrapin that she felt like she was losing her senses of taste and smell. *See* Am. Compl. Ex. A. On November 22, 2020, Matias disclosed her positive COVID-19 result to Terrapin. *See* Am. Compl. ¶ 31. Accordingly, in light of the disclosures that Matias made to Terrapin involving her positive COVID-19 test and her disclosure of symptoms common to certain forms of COVID-19 that can carry longer-term impairment of major life function, Matias has plausibly alleged that Terrapin regarded her as having an impairment that can substantially limit major life functions.

Moreover, the immediate temporal proximity between Matias' disclosure of her COVID-19 symptoms and her positive test result and her termination raises a strong inference that Terrapin regarded her as disabled. *See McFadden*, 2014 WL 80717, at *4 (determining that termination within one week following request for medical leave supports inference that plaintiff was "regarded as" disabled); *see also Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 387 (E.D. Pa. 2013) (concluding that termination four months after plaintiff disclosed impairment supported an inference that plaintiff was "regarded as" disabled). This inference is further strengthened by Matias' allegation that she had not received any discipline up to that point in her tenure with Terrapin. *See* Am. Compl. ¶ 30. Matias has alleged that she was terminated, on a Sunday, immediately following her disclosure to Terrapin that same day that she was COVID-19 positive. Accordingly, Matias' allegations are sufficient to sustain her claims under both the ADAAA and PHRA.

9
091521

Terrapin asserts that Matias fails to allege that she suffered any symptoms or informed Terrapin of the same.  *See* Mot. 6.  Notwithstanding, this argument is unavailing in light of the text messages attached to the Amended Complaint, in which Matias explains her symptoms as involving the loss of her senses of taste and smell.

Accordingly, Matias has sufficiently alleged claims of "regarded as" discrimination under both the PHRA and ADAAA.

**B.     Terrapin fails to establish that the perceived disability was transitory and minor.**

Terrapin's primary argument in support of dismissing Matias' ADAAA and PHRA claims is that the disability complained of by Matias is "transitory and minor."  The transitory and minor defense is an exception to the general protections under the Acts.  *See Eshleman*, 961 F.3d at 246 (quoting 42 U.S.C. § 12102(3)(B)).  Accordingly, the ADAAA and PHRA do not provide relief for an adverse employment action where the employer perceives the employee to have a disability that is objectively transitory and minor.  *See id.*

In an effort to establish that COVID-19 is transitory, Terrapin points out that the FFCRA leave period is only two weeks long.  *See* Mot. 4.  Terrapin argues that because Matias could only take up to two weeks of FFCRA leave, COVID-19 is transitory and minor.  Notwithstanding, even assuming *arguendo* that Terrapin has established that COVID-19 is transitory, Terrapin fails to establish that it is minor.  Terrapin focuses its arguments almost exclusively on the transitory nature of COVID-19.  However, courts have made clear that "transitory" and "minor" are two separate criteria, and a defendant must establish both in order to prevail in its defense.  *See Eshleman*, 961 F.3d at 246, 248 (quoting 29 C.F.R. § 1630.15(f)).

Accordingly, this Court turns to whether COVID-19 is "minor" as the term is contemplated in the ADAAA.

The CDC indicates that COVID-19 carries with it symptoms, including fever, chills, cough, shortness of breath, difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion, runny nose, nausea or vomiting, and diarrhea.[4] *See COVID-19: Symptoms of COVID-19*, CDC (Feb. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.  According to the CDC, "COVID-19 can damage the heart, blood vessels, kidneys, brain, skin, eyes, and gastrointestinal organs." *See COVID-19: Treatment in the Hospital*, CDC (Mar. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html.  The CDC recommends one seek immediate medical care if they experience "trouble breathing," "persistent pain or pressure in the chest," "new confusion," "inability to wake or stay awake," or "pale, gray, or blue-colored skin, lips, or nail beds." *COVID-19: What to Do If You Are Sick*, CDC (Mar. 17, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html.

As of the drafting of this Opinion, the COVID-19 pandemic has persisted for over 19 months in the United States.  *See WHO Director-General's opening remarks at the media briefing on COVID-19 -11 March 2020*, WORLD HEALTH ORG. (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-

---

[4]   This Court takes judicial notice of certain facts regarding COVID-19 that are posted by the CDC on its official website.  *See* FED. R. EVID. 201; *Qui Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself . . . ."); *see also Gent v. CUNA Mut. Ins. Soc.*, 611 F.3d 79 (1st Cir. 2010) (taking judicial notice of facts from the CDC website, as it is a federal agency under the Department of Health and Human Services).

at-the-media-briefing-on-covid-19---11-march-2020.[5] During the period beginning January 21, 2020 and ending September 14, 2021, the CDC reported over 41,260,000 confirmed domestic cases and over 658,000 deaths as a result of the COVID-19 pandemic in the United States. *See COVID Data Tracker*, CDC (Sept. 14, 2021), https://covid.cdc.gov/covid-data-tracker/#cases_casesper100k. On November 22, 2020, the date Matias was terminated, the CDC recorded over 176,000 new COVID-19 cases in the United States alone. *See Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC*, CDC, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases (last visited Sept. 15, 2021). For the period beginning August 1, 2021 and ending September 10, 2021, the seven-day moving average of hospitalizations of patients with confirmed COVID-19 infections in the United States was 89,221. *See Prevalent Hospitalizations of Patients with Confirmed COVID-19*, CDC (Sept. 12, 2021), https://covid.cdc.gov/covid-data-tracker/#hospitalizations.

In addressing the question of whether Swine Flu (H1N1) was minor, as the term is used in the ADAAA, district courts compared the mortality and hospitalization profile of Swine Flu to the seasonal flu, an ailment that is quintessentially transitory and minor. *See Valdez v. Minn. Quarries, Inc.*, No. 12-cv-0801 (PJS/TNL), 2012 WL 6112846, at *3 (D. Minn. Dec. 10, 2012) (citing *Lewis v. Fla. Default Law Grp., P.L.*, No. 10-cv-1182, 2011 WL 4527456, at *5-6 (M.D. Fla. Sept. 16, 2011)). In *Valdez*, the court noted that an estimated 274,000 people were hospitalized between April 2009 and April 2010 from Swine Flu, and an estimated 200,000 are

---

[5] This Court also takes judicial notice of the statement made by WHO's director-general at a media briefing on COVID-19. *See City of Phila. v. Sessions*, No. 17-3894, 2018 U.S. Dist. LEXIS 69082, at *14 (E.D. Pa. Apr. 24, 2018) (concluding that there is substantial precedent for taking judicial notice of public statements made by federal officials); *Prushan v. Select Comfort Retail Corp.*, No. 16-cv-5303, 2017 U.S. Dist. LEXIS 83710, at *8 n.2 (E.D. Pa. May 30, 2017) (taking judicial notice of a public statement made before a United States House of Representatives subcommittee).

hospitalized each year from the season flu.  *See id.*  (citing *Seasonal Influenza (Flu)*, CDC, http://www.cdc.gov/flu/about/qa/disease.htm (last visited Dec. 6, 2012)).  Moreover, an estimated 12,470 people died from Swine Flu between April 2009 and April 2010, and seasonal flu related deaths ranged between 3,000 and 49,000 per year between 1976 and 2006.  *See id.*  Accordingly, given the mortality and hospitalization similarities between the seasonal flu and Swine Flu, both *Valdez* and *Lewis* concluded that Swine Flu was minor as the term is used in the ADA.

Here, the hospitalization and mortality profiles of the seasonal flu pale in comparison to those associated with COVID-19.  Whereas an average of 422,000 people in the United States are hospitalized each year due to the seasonal flu,[6] domestic COVID-19 hospitalizations between August 1, 2020 and September 10, 2021 totaled over 2,876,000.  *Compare New Admissions of Patients with Confirmed COVID-19 Per 100,000 Population by Age Group*, CDC (Sept. 12, 2021), https://covid.cdc.gov/covid-data-tracker/#new-hospital-admissions, *with Past Seasons Estimated Influenza Disease Burden*, CDC (Oct. 1, 2020), https://www.cdc.gov/flu/ about/ burden/past-seasons.html.  When viewed from the perspective of mortality, COVID-19 proves to be more deadly than the seasonal flu.  The CDC estimated 61,000 domestic deaths due to the 2017-2018 seasonal flu, the highest recorded in the decade preceding 2020.  *See Past Seasons Estimated Influenza Burden*, CDC, *supra*.  However, as of September 14, 2021, COVID-19 is responsible for more than 660,000 deaths in the United States, over ten times the number of estimated flu-related deaths in 2017-2018.  *See COVID Data Tracker*, CDC, *supra*.

---

[6]  This average encompasses estimated seasonal flu hospitalizations as reported by the CDC between 2010 and 2020.

Accordingly, viewed objectively, COVID-19 is not "minor" as the term is contemplated in the ADAAA.

Terrapin argues that it "could not have perceived [Matias] to have a condition that was anything other than minor or transitory." *See* Mot. 10.  Notwithstanding, an employer "may not defeat 'regarded as' coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor." *See* 29 C.F.R. § 1630.15(f).  "[R]ather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) *both* transitory and minor." *See id.* (emphasis added).  Accordingly, Terrapin's subjective belief that Matias' COVID-19 result was minor does not carry its burden to establish the defense.  Terrapin has otherwise failed to establish that this Court should exempt the perceived disability under the "transitory and minor" exception to ADAAA and PHRA coverage.

**V.     CONCLUSION**

Matias sufficiently alleges that Terrapin regarded her as having a disability under the ADAAA and PHRA when it terminated her the same day that she disclosed her positive COVID-19 test result.  Moreover, Terrapin fails to meet its burden to establish that COVID-19 represents a transitory and minor impairment, so as to exempt it from coverage under the "regarded as" provisions of the ADAAA and PHRA.  Accordingly, Terrapin's motion to dismiss is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge